UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SABRINA REENEE LEWIS,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              13-CV-1072S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      In this action, Plaintiff Sabrina Lewis challenges an Administrative Law

Judge's ("ALJ") determination that she was not disabled within the meaning of the

Social Security Act ("the Act").

        2.      On August 2, 2010, Lewis protectively filed for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Act, claiming she had been unable to work since August 4, 2009. (R. 89, 92.)[1] The

applications were denied on December 20, 2010. (R. 53-60.) Lewis then requested a

hearing, which was held before ALJ William E. Straub on March 22, 2012. (R. 22-52.)

The ALJ confirmed that Lewis was aware of her right to postpone the hearing in order to

obtain representation. Lewis waived her rights and testified.

        3.      The ALJ considered her applications *de novo* and, on June 7, 2012,

issued a written decision finding Lewis was not disabled under the Act. (R. 10-18.) The

Appeals Council denied Lewis's request for review on August 27, 2013, and the ALJ's

---

[1] Citations to the administrative record are designated as "R."

decision became the Commissioner's final decision.[2] (R. 1-3.) Lewis commenced this action on October 25, 2013, challenging that final decision.

4.      On May 5, 2014 and June 4, 2014, respectively, Lewis and the Commissioner filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8 and 10.) The motions were deemed fully briefed as of June 25, 2014, at which time this Court took the matter under advisement.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Baker v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2]  The ALJ's June 7, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.      The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.   Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.   First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.   Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      Applying the sequential evaluation in the instant case, the ALJ found: (1) Lewis had not engaged in substantial gainful activity since August 4, 2009 (R. 12); (2) her partial thickness tear of the left rotator cuff and learning disability were severe impairments within the meaning of the Act (id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (id.); (4) Lewis had the residual functional capacity ("RFC") to perform light work[3] except she was unable to reach overhead with her left upper extremity (R. 13); (6)

_____

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it

she did not have past relevant work (R. 17); and (7) jobs existed in significant numbers in the national economy that Lewis could perform (id.).

11.     Lewis, now represented by counsel, contends that remand is required because: the ALJ's RFC determination is not supported by substantial evidence, and the ALJ's conclusions regarding Lewis's occupational base are not sufficient to sustain the Commissioner's burden at step 5 of the sequential process.

12.     The following facts are pertinent to Plaintiff's arguments. At the time of the ALJ hearing, Lewis was 41 years old. She had dropped out of high school in the 10th grade (R. 30, 109), but later became a certified nursing assistant ("CNA"). Lewis worked in that field for approximately 10 years, until incurring a shoulder injury in or about August 2009. (R. 32-33.) At the hearing, Lewis stated she had begun attending computer and GED classes. (R. 31, 39-40.)

Lewis was seen at Northwest Community Health Center for complaints of shoulder pain from August 24, 2009 through December 17, 2009. (R. 203-220.) X-rays taken on August 31, 2009 were normal. (R. 164.) An MRI taken on September 14, 2009 showed "supraspinatus tendinosis with a probable partial-thickness distal tear" of the rotator cuff. (R. 229.) There was no full thickness tear. (Id.)

Northwest referred Lewis to Dr. Rajiv Jain, an orthopedic doctor, for her left shoulder pain. Lewis saw Dr. Jain one time, on September 25, 2009. (R. 275-277.) He described Lewis's affect as angry, and noted she made a poor effort on exam. Even so,

---

requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. 404.1567(b).

he found her strength on external and internal left shoulder rotation was 4+/5, and supraspinatus 4+/5 on the left. There was no atrophy or tenderness in the left shoulder. Range of motion was decreased to 160 degrees of flexion and abduction. Extension was full. Left internal rotation at 0 was 45 degrees decreased. (R. 276.) Dr. Jain recommended a three-month course of physical therapy with reevaluation. There is no indication Lewis followed that treatment plan.

Lewis did not pursue further treatment for shoulder pain until April 26, 2011, when she returned to Northwest and was seen by family nurse practitioner ("FNP"), Ricardo Melendez. (R. 221-25.) Melendez noted Lewis was "applying to SSI stating she needs a letter from us." (R. 221.) Lewis complained of shoulder and low back pain. On exam, FNP Melendez noted left shoulder pain with ROM and palpitation, and lumbosacral spine pain with ROM. Lewis exhibited normal posture and gait, with no joint swelling or deformity, normal extremities, and normal muscle strength. She was cooperative, oriented, and was not in acute distress. Melendez referred her to physical therapy and ortho, but noted that Lewis had been noncompliant in the past. (R. 222-224.)

Six months later, Lewis was seen a second time by FNP Melendez. Lewis reported that she had lost her insurance "for a few months," and so, had not attended the recommended therapy or seen the specialist. (R. 200.) She stated that she again had insurance and wanted to continue her care. Melendez's exam revealed full ROM of the left shoulder with some tenderness on ROM and palpitation. (R. 201.)

One month later, on November 21, 2011, Lewis presented at Erie County Medical Center for an initial physical therapy evaluation. (R. 233.) The only noted

functional limitation was a decreased ability to lift her left upper extremity overhead. It was recommended that Lewis attend physical therapy twice per week for eight weeks. (Id.) She was discharged by ECMC on January 13, 2012, after she failed to appear for any therapy session. (R. 235.)

In the course of administrative proceedings, the Commissioner sent Lewis letters to call in, to which she did not respond, and a form for reporting her activities of daily living, which she did not return. (R. 191.) It was determined that Lewis, who claimed both a medical and a mental impairment, should be examined by a consultative internist and a psychiatrist. The Commissioner scheduled a consultative exam regarding "a joint problem" for November 9, 2010, and the provider was prepared to assess Lewis's IQ the same day. (R. 120-121.) Lewis appeared on the scheduled date, but then left prior to the examinations, stating she did not want to wait. (R. 121.) A state agency psychologist later reviewed the record, but found insufficient evidence to establish the existence of an organic mental disorder. (R. 179-192.)

At the outset of Lewis's hearing, the ALJ thoroughly questioned Lewis's understanding of her right to counsel, and offered to postpone the hearing so that she could obtain counsel. Lewis chose to waive her rights and proceed that day. (R. 24-27.) With regard to her daily activities, Lewis testified she was able to prepare breakfast, lunch, and dinner each day for herself and her children, clean, mop, sweep, do dishes, make her bed, do laundry, and take care of her personal hygiene. (R. 39, 44, 47.) She was attending school five days a week, and went to church. (R. 40, 46.) Lewis, who is left-hand dominant, could write with her left hand for short periods, but her penmanship was not good. (R. 35, 43.) She could button clothing using her left hand, but could not

always open a jar. (R. 43.) She reported that her left shoulder is sore, especially in cold weather and at night, and she was unable to braid her daughters' hair. (R. 35.) She was given a 20 pound lifting limitation, but had no problem walking or getting around. (R. 44-45.) Lewis had pain in her low back, which she lived with, and could sit for an hour at a time. (R. 49-51.) She testified that her learning disability involves issues with her attention span, for which she has good and bad days. (R. 48.)

At the close of the hearing, the ALJ stated that he would seek updated medical records from Northwest, and records from additional providers Lewis mentioned in her testimony. (R. 51.) He made all such contacts, added the replies he received to the record, provided Lewis with copies, and gave her an opportunity to submit additional comments or materials. (R. 51, 149-54.)

13.   Lewis now maintains that, before making an RFC determination, the ALJ was required to obtain a medical opinion from a treating source or, alternatively, to advise Lewis of its importance and urge her to obtain the opinion, and was required to take additional steps to procure a consultative examination. (Docket No. 8 at 9, 12-14.) Failure to do so, she contends, was per se error.

14.   An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 SSR LEXIS 5 at *5, 1996 WL 374184, at *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009)

(citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." Stanton v. Astrue, 2009 U.S. Dist. LEXIS 130826, 2009 WL 1940539, *9 (N.D.N.Y. June 4, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 370 Fed. Appx. 231 (2d Cir. 2010).

Generally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dailey v. Astrue, 2010 U.S. Dist. LEXIS 122892, 2010 WL 4703599, *11 (W.D.N.Y.) (internal quotation omitted), report and recommendation adopted, 2010 U.S. Dist. LEXIS 122893, 2010 WL 4703591 (W.D.N.Y. 2010). Accordingly, "[w]here the medical findings in the record merely diagnose [the] claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities . . . [, the Commissioner] may not make the connection himself." Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (internal quotation omitted).

15.   In assessing a claimant's alleged disability, the ALJ must develop the claimant's medical history for at least a twelve-month period. 42 U.S.C. § 423(d)(5)(B), 20 C.F.R. §§ 404.1412(d), 416.912(d). This duty to develop the record, together with the treating physician rule, produces an obligation that encompasses the duty to obtain information from physicians who can provide opinions about the claimant. Jackson v. Colvin, 2014 U.S. Dist. LEXIS 124378, 2014 WL 4695080, at *17 (S.D.N.Y. June 11, 2014).

The Second Circuit has determined that a physician who has treated a claimant can provide a meaningful opinion where he enjoys a unique relationship with the claimant "resulting from the 'continuity of treatment he provides and the doctor/patient relationship he develops.'" <u>Petrie v. Astrue</u>, 412 Fed. Appx. 401, 405, 2011 WL 781901 at (Mar. 8, 2011) (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983)). The opinion of a physician who examines a claimant once or twice, does not see the claimant regularly, and does not develop a physician/ patient relationship does not meet this standard. <u>Id</u>.

In this case, the Court finds the ALJ did not err when he did not pursue something that could not reasonably be obtained—i.e., an opinion from a physician or other treating source whose relationship with Lewis was such that the opinion, if supported by the record evidence, would be entitled to controlling weight. There is no physician that Lewis saw more than once, and she saw FNP Melendez on only two occasions, six months apart.

In any event, it is not per se error for an ALJ to make the RFC determination absent a medical opinion. In <u>Tankisi v. Commissioner of Social Security</u>, the Second Circuit expressly rejected the argument Lewis makes here, that the lack of a medical opinion is a fatal error requiring remand. 521 Fed. Appx. 29, 2013 WL 1296489 (2d Cir. Apr.2, 2013). The Circuit Court held that remand is not necessary where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." 521 Fed. Appx. At 34. In <u>Tankisi</u>, the record was found sufficient where, although the record contained no formal opinion, it did include a physician's assessment of the plaintiff's limitations. <u>Id</u>. In other circumstances, especially where the

medical evidence shows relatively minor physical impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." <u>House v. Astrue</u>, 2013 U.S. Dist. LEXIS 13695, 2013 WL 422058 at *4 (N.D.N.Y. Feb. 1, 2013) (internal quotation omitted).

The Court finds no error here that would require remand. The record contains Lewis's treatment notes and test results, and there are no apparent gaps in the medical history. The only functional limitation identified at Lewis's physical therapy evaluation was a decreased ability to lift her left arm overhead "to put away dishes, do hair, wash in shower." (R. 233.) The ALJ included this limitation in his RFC, and, although it does not appear in any medical record, he also included the 20-pound lifting limitation Lewis testified to. Lewis testified that she had no problems standing or walking, and could sit for an hour before changing position. The medical evidence and Lewis's stated activities of daily living do not suggest any further limitations. In light of the record evidence, the relatively minor physical impairments at issue, and the absence of physician/patient relationships, this Court concludes it was permissible for the ALJ to make an RFC determination without a treating source's opinion.

16.    As previously noted, the Commissioner did authorize and schedule medical and mental consultative examinations in this case. If not for Lewis's decision to leave before being called for her examinations, the record would have contained medical source statements from the examiners. Lewis nevertheless argues remand is required in this regard because the ALJ was required to reschedule her exams or give her an opportunity to explain why she left the examiners' office.

> Pursuant to the regulations, if necessary additional information is not readily available from a claimant's physicians or other medical sources,

the ALJ "will ask [the claimant] to attend one or more consultative examinations at [the SSA's] expense." 20 C.F.R. § 404.1512(f). Nevertheless, "when despite efforts to obtain additional evidence the evidence is not complete, [the ALJ] will make a determination or decision based on the evidence [he has]." 20 C.F.R § 404.1527(c)(4). Accordingly, if a claimant fails or refuses to take part in a scheduled consultative examination and has no good reason for the failure or refusal, a finding of not disabled may be rendered. Id. § 404.1518(a). The regulations instruct claimants, "if you have any reason why you cannot go for the scheduled appointment, you should tell us about this as soon as possible before the examination date." 20 C.F.R. § 404.1518(a). Good reasons for failing to appear at a consultative examination include, but are not limited to (1) illness on the date of the scheduled examination; (2) not receiving timely notice of the scheduled examination or receiving no notice; (3) being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place of the examination; (4) having a death or serious illness in claimant's immediate family; or (5) claimant's treating physician objecting to the examination. Id. § 404.1518(b)-(c). The regulations also note that an ALJ "will consider [a claimant's] physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if [the claimant has] a good reason for failing to attend a consultative examination." Id. § 404. 1518(a).

Antoniou v. Astrue, 2011 U.S. Dist. LEXIS 109692, 2011 WL 4529657, at *16 (E.D.N.Y. Sept. 27, 2011) (internal case citations omitted).

In this case, Lewis clearly received correct and complete information, as she appeared on the appointed date. The examiner's office reported that Lewis left before she could be assessed, stating she did not want to wait. That is not a "good reason," as contemplated in the regulations, for failing to submit to an examination. See Crawford v. Astrue, 2014 U.S. Dist. LEXIS 138219, 2014 WL 4829544, at *22 (W.D.N.Y. Sept. 29, 2014) (where value of scheduled consultative examination was undermined by plaintiff's false statements and refusal to cooperate, remand for purpose of giving plaintiff another opportunity to attend consultative exam was not warranted; ALJ had fulfilled duty to develop the record); Irizarry v. Astrue, 2012 U.S. Dist. LEXIS 7380, 2012 WL 177969, at

*1 (N.D.N.Y. 2012) ("if a claimant, without good cause, fails or refuses to attend and participate in a consultative examination, the ALJ may render a finding of not disabled"). Where, as here, the record already contains evidence of Lewis's reason for failing to participate in the examination, the ALJ was not required to give her an opportunity to contradict her prior statement. Kratochvil v. Comm'r of Soc. Sec., 2009 U.S. Dist. LEXIS 41674, 2009 WL 1405226, at *4–5 (N.D.N.Y. May 18, 2009) (where plaintiff's proffered "good reasons" for failing to attend consultative examinations were contradicted by the record, plaintiff could not prevail based on a challenge to the adequacy of the record).

17.    Finally, Lewis urges that, in light of her nonexertional reaching limitation, it was error for the ALJ to rely on the Medical-Vocational Guidelines in assessing her employment opportunities.

In Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986), the Second Circuit held that use of the Guidelines to determine a claimant's disability status without consulting a vocational expert is not improper so long as the claimant's nonexertional impairments do not "significantly limit the range of work permitted by [the claimant's] exertional limitations." Id. at 605 (quoting Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983) (per curiam)) (alteration added). Thus, use of the Guidelines is appropriate as long as the nonexertional limitations do not "so narrow a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity." Id. at 606.

Here, the ALJ found that Lewis's overhead reaching limitation "had little or no effect on the occupational base of unskilled light work." (R. 18.) This determination is supported by substantial evidence in the record. Given the limited treatment Lewis pursued for her shoulder pain, along with the ALJ's finding that Lewis had no restriction

in activities of daily living (R. 13 "the claimant cares for her children and her home and attends school on a full time basis"), the ALJ could properly use the Guidelines to determine Lewis was capable of performing work available in the national economy, without seeking the testimony of a vocational expert.

* * * *

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  November 20, 2014
        Buffalo, New York

                                        /s/William M. Skretny
                                    _____
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                    United States District Court